This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **NO.  31,136**

**EDWARD GARCIA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Gary M. Jeffreys, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Francine A. Chavez, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Office of Steven Almanza
Steven L. Almanza
Las Cruces, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

Defendant Edward Garcia appeals his convictions for aggravated assault against a household member (deadly weapon), false imprisonment, and aggravated battery against a household member (no great bodily harm). We affirm.

**SUFFICIENCY OF THE EVIDENCE**

Defendant argues that insufficient admissible evidence supported his conviction for aggravated assault on his girlfriend, Leticia Loya (Victim), with a deadly weapon. He does not challenge the sufficiency of the evidence for his other two convictions.

"Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "In reviewing the sufficiency of evidence used to support a conviction, we resolve all disputed facts in favor of the [s]tate, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *Id.* We determine as a matter of law "whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Apodaca*,

118 N.M. 762, 766, 887 P.2d 756, 760 (1994) (internal quotation marks and citation omitted).

To convict Defendant of aggravated assault on a household member with a deadly weapon, the State had to prove each of the following elements beyond a reasonable doubt:

1.  [D]efendant threatened [Victim] with a knife;
2.  [D]efendant's conduct caused [Victim] to believe [D]efendant was about to intrude on [Victim's] bodily integrity or personal safety by touching or applying force to [Victim] in a rude, insolent or angry manner;
3.  A reasonable person in the same circumstances as [Victim] would have had the same belief;
4.  [Victim] was a household member of [D]efendant;
5.  [D]efendant used a knife;
6.  This happened in New Mexico on or about the 8th day of March, 2010.

*See* UJI 14-305 NMRA; NMSA 1978, § 30-3-13(A)(1) (1995). There does not appear to be any dispute as to the time and place of the incident or that Victim was a household member of Defendant. Rather, the dispute concerns whether Defendant had a knife and whether he threatened Victim with it such that she felt Defendant was about to intrude on her bodily integrity or personal safety.

At trial, Victim testified on direct examination as follows. After Defendant had punched her in the head several times, she tried to go from the bedroom into the living room. At that point, Defendant took a knife out of his pants pocket and told her to go

back into the bedroom. Defendant struck her again, and acted as if he was going to stab her with the knife. Defendant told her that he was not going to jail for hitting her and that if she called the police he was going to kill her and himself. He put the knife to her stomach, and she believed he intended to injure her because he had done it "so many times" before. At some point, the knife "went flying" out of Defendant's hand. She did not know where it was, but Defendant eventually found it and put it back in his pocket. She never saw the knife again after that.

On cross-examination, Victim testified concerning the written statement she made in the course of obtaining a restraining order on March 10, 2010, two days after the incident described above. She acknowledged that she had not mentioned in the written statement that Defendant had threatened to kill her, only that he threatened to kill himself. Defense counsel asked her if she recalled stating during an interview with defense counsel about two weeks earlier that Defendant never found the knife, and that it was in the draperies and she found it later. Victim replied that she did not recall saying that, but that at the time of the incident she had seen the knife hanging in the draperies but that she did not tell Defendant, who was looking for it, that it was there. She was not able to describe the knife.

Defendant testified on his own behalf at trial. On direct examination, he acknowledged that he had struck Victim, but denied ever having a knife. The two

4

police officers who investigated the incident both testified that they had not looked for a knife as part of their investigation because the incident had occurred two days earlier.

Defendant points to several purported discrepancies between Victim's testimony at trial and her earlier statements. He argues that these are not mere inconsistencies, but are outright contradictions and are so frequent that no reasonable jury could have found him guilty beyond a reasonable doubt. First, he points out that when Victim applied for a restraining order two days after the incident, she did not mention in her affidavit that Defendant had threatened her; she only stated that Defendant took out the knife and threatened to kill himself. The affidavit does not appear in the record, but we consider the purported discrepancy inconsequential. We first note that Victim's affidavit was consistent with her trial testimony to the extent that Defendant had a knife. Further, a written narrative in support of a petition for a restraining order, which needs only to provide enough information to persuade the judge that a restraining order is justified, is a different circumstance than testimony in response to structured questioning at trial by a prosecutor seeking to establish each element of a charged offense. *See* NMSA 1978, § 40-13-3 (2008) (stating requirements for domestic violence order of protection).

5

Next, Defendant suggests that Victim testified inconsistently as to whether Defendant touched her with the knife.  We disagree.  In relevant part, the following exchange took place:

Victim:      [Defendant] took out the knife and he said he was going to stab me. . . . He put it to my stomach and . . . .

    . . . .

Victim:      I tried to go into the living room, and then he took the knife out and told me to go back into the room.  And I said that I just wanted to be with the girls, and he put it to my stomach and told me that he was going to use it if I didn't go back to the room, so I went back to the room.

    . . . .

Prosecutor: Could you describe how you felt when you had the knife against you?

    . . . .

Prosecutor: [D]id he touch you with the knife?

Victim:      No.  He . . .

Prosecutor: Just pointed it at you?

Victim:      Yes.

Prosecutor: And where did he point it?

Victim:      He put it to my stomach right here.

On redirect examination, Victim further explained that she had not been cut by the knife but that it had come in contact with her clothing. With the possible exception of Victim's brief, incomplete statement "No. He . . . ," her testimony was consistent in asserting that Defendant held the knife against her, and she apparently indicated exactly where the knife was held. We see nothing contradictory in Victim's testimony on this subject.

Finally, Defendant asserts that Victim's testimony regarding the point at which Defendant lost the knife was contradictory. We again disagree. On direct examination, Victim's testimony included the following.

Victim:     [Defendant] took out his knife, like–like if he was going to stab me with it, and the knife just like slipped out of his hand. I don't know what happened, but he got really mad and he was looking for it like crazy. He had me looking for it. He even moved the furniture around to find it.

                . . .

Prosecutor: You said the knife went flying. How did that happen?

Victim:     I don't know. I don't know if I kicked it, with my hand. I don't know. I just saw the knife, because when he went like that (indicating), I just closed my eyes, and when I opened them, he didn't have the knife. He was–it was–I saw it went flying, but I didn't know where it was at, the knife, and he started looking for it.

Prosecutor: Did he ever find the knife?

Victim:     Yes.

7

Prosecutor: And what did he do with it?

Victim: He put it back in his pocket.

On cross-examination, the following exchange took place between defense counsel and Victim:

Counsel: And at that time, the knife slipped out of his hand?

Victim: Yes.

Counsel: And then he went and found that knife, correct?

Victim: Yes.

Counsel: And took it, right?

Victim: Yes.

Counsel: Do you remember talking to me about two weeks ago at the district attorney's office?

Victim: Yes.

Counsel: And do you remember telling me on that date that he never did find the knife?

Victim: No.

Counsel: That the knife was actually in the draperies and you found it later?

Victim: No. I saw it there, that it was hanging, but I did not tell him where it was, because he had me looking for it. And I said I just didn't know where it was at, and he kept on looking for it.

Victim then acknowledged that she could not describe the knife because she had not seen it before.

Again, we see no significant inconsistency in this testimony. On direct examination, Victim testified that when the knife went flying, she did not know where it went. The prosecutor did not ask her if at some later point she learned where it had gone. When Defendant's counsel asked her on cross-examination whether the knife had gone into the draperies, she denied having found it there later, and explained that at some point, presumably while she and Defendant were still looking for it, she had noticed it in the draperies but did not tell Defendant. We further observe that the question of precisely when and how the knife was found has little bearing on the issue of whether Defendant threatened Victim with it. We conclude that Victim's testimony on direct examination and on cross-examination is adequately reconcilable.

We conclude that sufficient evidence supported each element of the charge of aggravated assault with a deadly weapon on a household member such that a jury could find each element established beyond a reasonable doubt.

**ADMISSIBILITY OF EVIDENCE OF DEFENDANT'S DRUG USE**

Defendant argues that the district court committed reversible error when it allowed the prosecutor to ask Defendant questions about his alleged drug abuse. "The admission or exclusion of evidence is within the sound discretion of the district court;

9

that judgment will be set aside only on a showing of abuse of discretion." *State v. Barr*, 2009-NMSC-024, ¶ 29, 146 N.M. 301, 210 P.3d 198, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ___ N.M. ___, 275 P.3d 110. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Rojo*, 1999-NMSC-001, ¶ 41 (internal quotation marks and citation omitted).

On cross-examination of Defendant, the following exchange took place:

Prosecutor: Were you under the influence of meth or any other drugs that day?

Defendant: No, not that day.

Prosecutor: But before?

Defendant: I–I have been.

Prosecutor: Isn't it true that by March 10, you had been up for five or six days without sleeping?

At this point, defense counsel asked to approach for a bench conference. He argued that Defendant's alleged drug use was not relevant or material, as he had not been charged with any drug offense, and that the questioning was more prejudicial than probative. The prosecutor responded that Victim had testified that Defendant had been on drugs, and that the questioning thus was relevant to her credibility as to why

10

she did what she did, including not calling the police. The district court allowed the questioning, upon which the prosecutor continued:

> Prosecutor: Mr. Garcia, isn't it true that by March 10, you'd been awake without sleeping for five or six days?
>
> Defendant: No. I was under the influence of narcotics on March 10 but not up for several days, maybe up for one night before.

The prosecutor also questioned Defendant about his two prior felony convictions and established that they were drug-related.

We agree with Defendant that the district court erred in allowing the prosecutor to question Defendant about his drug use, as it was not relevant to any of the charges at trial. *See* Rule 11-404(B) NMRA ("Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith."); Rule 11-403 NMRA ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. . . ."). Victim's remarks during her testimony that Defendant "had already been acting weird for a couple of days, which I believe he had been using drugs," and that he "was acting weird again, like–like he was on drugs," did not make Defendant's drug use any more relevant to the charges.

We conclude, however, that any error in allowing the questions about drug use was harmless error. Because the error consisted of a violation of rules of evidence and

did not implicate any constitutional issues such as the right of confrontation, the error was non-constitutional. "[W]here a defendant has established a violation of statutory law or court rules, non-constitutional error review is appropriate. A reviewing court should only conclude that a non-constitutional error is harmless when there is no reasonable *probability* the error affected the verdict." *Barr*, 2009-NMSC-024, ¶ 53; *see also Tollardo*, 2012-NMSC-008, ¶ 43 (stating that consideration of whether an error was harmless "requires an examination of the error itself, which depending upon the facts of the particular case could include an examination of the source of the error and the emphasis placed upon the error").

In concluding that there was no reasonable probability that the error affected the verdict and was thus harmless, we make two observations. First, as noted above, Victim had already raised the subject of drug use in her testimony during the State's case. Second, as indicated by the transcript excerpt above, Defendant denied being under the influence of methamphetamine or other drugs on "that day," presumably meaning March 8, 2010, the date of the incident. He later acknowledged that he was under the influence of narcotics on March 10, 2010, the date police first investigated the incident. Thus, to the extent Victim's testimony suggested to the jury that Defendant was under the influence of drugs on March 8, his testimony taken at face value refuted that suggestion.

12

In *Tollardo*, the New Mexico Supreme Court recently repudiated the long-standing three-part harmless error test first announced in *State v. Moore*, 94 N.M. 503, 504, 612 P.2d 1314, 1315 (1980). *See Tollardo*, 2012 NMSC-008, ¶¶ 29-42. That test considered the proportionate volume of evidence for and against a defendant, with little consideration of the effect the error might have had on the verdict. *Tollardo* recognizes, however, that "evidence of a defendant's guilt separate from the error may often be relevant, even necessary, for a court to consider, since it will provide context for understanding how the error arose and what role it may have played in the trial proceedings." *Id.* ¶ 43. As discussed above, Victim's testimony provided substantial evidence to support each of the charges for which Defendant was convicted. Defendant's own testimony, in which he admitted striking Victim, provided substantial evidence for the aggravated battery conviction. In this context, we conclude that there is no reasonable probability that the brief and somewhat inconclusive questioning about Defendant's drug use affected the verdict.

**CONCLUSION**

For the reasons set forth above, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

13

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**TIMOTHY L. GARCIA, Judge**